```
1  PETER C. ANDERSON
   UNITED STATES TRUSTEE
2  ABRAM S. FEUERSTEIN, SBN 133775
   ASSISTANT UNITED STATES TRUSTEE
3  UNITED STATES DEPARTMENT OF JUSTICE
   OFFICE OF THE UNITED STATES TRUSTEE
4  3801 University Avenue, Suite 720
   Riverside, CA 92501-2804
5  Telephone:    (951) 276-6990
   Facsimile:    (951) 276-6973
6  Email:        Abram.S.Feuerstein@usdoj.gov
```

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>MIGUEL NIGO,<br><br>         Debtor.<br>_____<br><br>UNITED STATES TRUSTEE FOR THE CENTRAL DISTRICT OF CALIFORNIA, REGION 16,<br><br>         Plaintiff,<br><br>    v.<br><br>MARIA MARES,<br><br>         Defendant. | Case No. 6:19-bk-16555-WJ<br><br>Chapter 7<br><br>Adversary No. _____<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND FINES AGAINST DEFENDANT MARIA MARES**<br><br>(Summons to be Issued) |

Plaintiff, United States Trustee for the Central District of California, Region 16, hereby alleges as follows:

-1-

## JURISDICTION AND STANDING

1. This is an action seeking injunctive and other relief against bankruptcy petition preparer Maria Mares ("Mares" or "Defendant") pursuant to 11 U.S.C. § 110(j).

2. This Complaint is one arising from Case No. 6:19-bk-16555-WJ ("Bankruptcy Case") under Chapter 7 of the Bankruptcy Code, currently pending in this Court.

3. Jurisdiction is proper under 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. § 1409(a).

4. This a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E) and/or (O).

5. Pursuant to 11 U.S.C. §§ 110 and 307, the United States Trustee has standing to bring this Complaint.

## THE PARTIES

6. Plaintiff, the United States Trustee for the Central District of California, Region 16 ("U.S. Trustee" of "Plaintiff"), is the duly appointed United States Trustee for Region 16, which comprises the Judicial District of the Central District of California.

7. Mares is an individual residing in the State of California.

## GENERAL ALLEGATIONS

8. Plaintiff is informed and believes that in early May 2019, Miguel Nigo ("Mr. Nigo") sought assistance with filing a bankruptcy case because of the pressure and distress he felt resulting from debt collection efforts by his creditors. He contacted several law firms to assist him with a bankruptcy filing but upon learning what they charged he did not believe that he could afford their services.

9. Upon information and belief, around this time Mr. Nigo viewed an advertisement for legal services by The Law Offices of Anthony Contreras ("Contreras Firm") published in a magazine or circular that he picked up outside a store. The advertisement contained a coupon that purported to deduct $200 from the cost of bankruptcy legal services provided by the Contreras Firm.

10. Mr. Nigo telephoned the Contreras Firm in response to the advertisement and spoke to a representative of the firm. Upon information and belief, Mr. Nigo asked the representative what the Contreras Firm charged to prepare a bankruptcy filing and was told that the price was $2,500. Mr. Nigo explained that he could not afford to pay $2,500 and hung up the phone.

11. Shortly afterwards, Plaintiff is informed and believes that Mr. Nigo received a call from Mares. She advised Mr. Nigo that she would charge him $1,000 for the paperwork associated with filing a bankruptcy case, clarifying that the $1,000 included the $200 coupon savings. Mr. Nigo told Mares that he did not have the $1,000 at that time. Mares suggested to Mr. Nigo that he borrow the money and she would then start to help him with the bankruptcy.

12. After borrowing money from his brother, on or about May 7, 2019, Mr. Nigo attended an appointment with Mares at an office located at 8175 Limonite Avenue in Riverside, California ("Limonite Avenue Office"). At that time, Mr. Nigo entered into a contract for bankruptcy legal services ("Contract"). The Contract was printed on the Contreras Firm's stationary.

13. Under the Contract, in exchange for a payment of $1,000, Mares agreed that she would prepare Mr. Nigo's bankruptcy paperwork. The Contract specified that the bankruptcy would be a "limited scope" one in which no attorney would attend a meeting of creditors on behalf of Mr. Nigo. Mr. Nigo gave Mares an initial cash payment of $500 and agreed to pay the remaining $500 when the paperwork was completed at the end of the month, on or about May 29, 2019.

14. Plaintiff is informed and believes that Mr. Nigo was unclear as to what role, if any, attorney Anthony Contreras ("Contreras") would have in connection with Mr. Nigo's bankruptcy filing. When he met with Mares initially, Mr. Nigo took note that the Limonite Avenue Office did not have the appearance of an attorney's office. It lacked signage, contained no computers or phones, and appeared to be empty with the exception of two chairs and a desk located in a room. Mares provided Mr. Nigo with a business card which identified Mares as the "Director of Operations" for the Contreras Firm, and Mares initially represented to Mr. Nigo that Contreras would review the completed paperwork. However, Mr. Nigo had no interaction with Contreras and

in fact never met Contreras.  And, when Mr. Nigo returned to the Limonite Avenue Office to pick up his completed bankruptcy papers, Mares did not tell Mr. Nigo or confirm in any way that the paperwork had ever been reviewed by Contreras.

## MARES PROVIDES LEGAL ADVICE TO MR. NIGO AND ADVISES HIM ABOUT BANKRUPTCY PROCEDURES

14.     Plaintiff is informed and believes that in his meeting with Mares, Mr. Nigo asked Mares whether or not Mr. Nigo's spouse should file jointly with him.  Mr. Nigo particularly was concerned about a debt of approximately $5,800 owed to the County of Riverside based on a public assistance loan extended by the County to the Nigo family.  Mr. Nigo asked Mares if the County could collect the debt against his spouse if she was not included in the bankruptcy.  Mares advised Mr. Nigo not to "worry about" the debt, and that a bankruptcy filing by Mr. Nigo would "freeze" the account and prevent the collection of it against either Mr. Nigo or his non-filing spouse.

15.     Upon information and belief, Mares advised Mr. Nigo that he would not need to pay the Court filing fees because he was unemployed and would qualify for a fee waiver.  To that end, Mares prepared on behalf of Mr. Nigo an "Application to Have the Chapter 7 Filing Fee Waived" ("Fee Waiver Application") and did so in a manner that concealed the $1,000 in preparation fees that Mr. Nigo had paid Mares.

16.     In addition to giving Mr. Nigo his completed bankruptcy documents on or about May 29, 2019 and instructing him on how to file the documents at the bankruptcy court, Plaintiff is informed and believes that Mares gave Mr. Nigo a document entitled "Step by Step Process for Chapter 7 Bankruptcy: What to do after filling (sic) your petition" ("Step by Step Guide").  The Contreras Firm's name was imprinted on the Step by Step Guide.  The Step by Step Guide provides specific information to debtors about, among other things, the documents they should provide to their bankruptcy trustees after filing a bankruptcy case, and the questions that the trustee will ask debtors at their meetings of creditors.

## MARES INSTRUCTS MR. NIGO TO LIE ABOUT HER ROLE IN PREPARING THE BANKRUPTCY DOCUMENTS

17. Upon information and belief, after Mr. Nigo received notice from the Court confirming that his case had been filed and notifying him of the date for his meeting of creditors, he had some questions about the court papers he received. He telephoned Mares. At the end of their conversation, Mares told Mr. Nigo that when he attended his meeting of creditors and was asked by the Chapter 7 trustee whether Mr. Nigo had assistance with his paperwork, he should respond that "nobody" had helped him. She noted that if Mr. Nigo disclosed that he had assistance, his bankruptcy case would be "dismissed" and that he would have to "start all over."

18. At the time that Mares provided bankruptcy services to Mr. Nigo, Contreras had been suspended by the State Bar and was ineligible to practice law.

## MARES ENGAGES IN SIMILAR CONDUCT IN A PRIOR CASE AND IS ENJOINED FROM PROVIDING BANKRUPTCY PETITON PREPARER SERVICES

19. In January 2015, in the case of *In re Sanchez*, case no. 6:14-bk-21482-MH ("*Sanchez*"), Mares entered into a Court-approved "Stipulation Resolving Motions for Disgorgement and Fines" ("Stipulation"). In *Sanchez*, Mares failed to disclose her role in preparing the Debtors' bankruptcy documents and charged the Debtors exorbitant fees of at least $1,500. At the time, Mares described herself as the CEO of a law firm called "Action Law Firm," which was owned or operated by a now deceased attorney, Thomas Gillen.

20. In resolving the U.S. Trustee's enforcement action against her in *Sanchez*, Mares agreed to a permanent injunction preventing her from providing future bankruptcy petition preparer ("BPP") services ("Stipulated Injunction"). However, the Stipulated Injunction did not apply to Mares to the extent she performed duties "as an actual employee of an attorney and that attorney (was) actively supervising her work in an employee/employer relationship" *provided that Mares notified the U.S. Trustee of the identity of her employer and the nature of her duties as an employee, including any changes in such employment*. Upon information and belief, Mares failed to provide notice to the U.S. Trustee of any such employment arrangement.

21. The Stipulation and the Order approving the Stipulation further provided that Mares refund the Debtors in *Sanchez* the sum of $1,500 ("Refund"), and that Mares pay fines of $750 ("Fines") to the U.S. Trustee. Upon information and belief, Mares failed to pay the Refund or the Fines. Mares filed a personal Chapter 13 bankruptcy case on August 17, 2018, in Case No. 2:18-bk-19541-WB, pending in the Court's Los Angeles Division.

22. Notwithstanding that at the time she provided services to Mr. Nigo, Mares purportedly was employed by the Contreras Firm. Plaintiff is informed and believes that through her course of conduct in providing information and assistance to Mr. Nigo, and preparing his bankruptcy documents in exchange for compensation, Mares was a BPP.

23. As a BPP, Mares is subject to the provisions of 11 U.S.C. §110.

## FIRST CLAIM FOR RELIEF

**(Failure to Disclose Identity)**

24. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 23 above, inclusive, as if set forth fully herein.

25. Under Bankruptcy Code Section 110(b)(1), a BPP who prepares a document for filing is required to sign the document and print on the document the preparer's name and address.

26. Mares prepared multiple documents for filing (collectively, "Bankruptcy Documents") on behalf of Mr. Nigo, including without limitation the following: the Voluntary Petition; Official Form 106Sum – Summary of Assets and Liabilities; Schedules A through J; the Statement of Financial Affairs; the Statement of Intention for Individuals Filing Under Chapter 7; the Chapter 7 Statement of Current Monthly Income; and the Verification of Master Mailing List of Creditors.

27. Mares failed to sign the Bankruptcy Documents and print her name and address on each of them.

28. Mares violated Bankruptcy Code Section 110(b)(1) and pursuant to Bankruptcy Code Section 110(l)(1) is subject to a fine of not more than $500 for each violation of Bankruptcy Code Section 110(b)(1).

29. Moreover, under Bankruptcy Code Section 110(l)(2)(D), the Court shall triple the amount of any fine assessed in any case in which the Court finds that the BPP prepare a document for filing in a manner that failed to disclose the identity of the BPP.

WHEREFORE, the Plaintiff prays for relief as set forth below.

### SECOND CLAIM FOR RELIEF

**(Failure to Disclose an Identifying Number)**

30. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 23 above, inclusive, as if set forth fully herein.

31. Under Bankruptcy Code Section 110(c)(1), a BPP who prepares a document for filing is required to place on the document, after the preparer's signature, an identifying number that identifies the individual who prepared the document. And, if the BPP is an individual, the identifying number shall be the Social Security account number of the individual.

32. Mares prepared multiple documents for filing (collectively, "Bankruptcy Documents") on behalf of Mr. Nigo, including without limitation the following: the Voluntary Petition; Official Form 106Sum – Summary of Assets and Liabilities; Schedules A through J; the Statement of Financial Affairs; the Statement of Intention for Individuals Filing Under Chapter 7; the Chapter 7 Statement of Current Monthly Income; and the Verification of Master Mailing List of Creditors.

33. Mares failed to place her identifying number on the Bankruptcy Documents.

34. Mares violated Bankruptcy Code Section 110(c)(1) and pursuant to Bankruptcy Code Section 110(l)(1) is subject to a fine of not more than $500 for each violation of Bankruptcy Code Section 110(c)(1).

35. Moreover, under Bankruptcy Code Section 110(l)(2)(D), the Court shall triple the amount of any fine assessed in any case in which the Court finds that the BPP prepare a document for filing in a manner that failed to disclose the identity of the BPP.

WHEREFORE, the Plaintiff prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF

### (Charging Excessive Fees Pursuant to 11 U.S.C. § 110(h)(3))

36. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 23 above, inclusive, as if set forth fully herein.

37. The Defendant charged Mr. Nigo $1,000 to prepare his Bankruptcy Documents.

38. Under § 110(h)(3)(A), the Bankruptcy Court has the express authority to disallow any fee found to be in excess of the value of any services rendered during the twelve (12) months before the date the petition was filed and shall order the immediate turnover of those fees. Under § 110(h)(3)(B), the court is also authorized to order the petition preparer to forfeit all fees charged in any case in which the preparer fails to comply with § 110(h) or with subsections (b), (c), (d), (e), (f), or (g).

39. The Defendant collected $1,000 as payment for preparing and/or filing the Bankruptcy Documents and other papers filed in the Bankruptcy Case. These charges are in excess of the value of any services rendered by the Defendants. In addition, based on Mares' other violations of Section 110, any fees collected by Mares are subject to forfeiture.

WHEREFORE, the Plaintiff prays for relief as set forth below.

### FOURTH CLAIM FOR RELIEF

### (Fines for Providing Legal Advice)

40. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 23 above, inclusive, as if set forth fully herein.

41. Bankruptcy Code Section 110(e)(2)(A) prohibits a BPP from offering a potential bankruptcy debtor any legal advice.

42. Mares provided legal advice to Mr. Nigo concerning whether his wife should join the petition and whether by not doing so the couple would be able to discharge the debt they owed to the County of Riverside; Mares also advised Mr. Nigo about the Fee Waiver Application; Mares also advised Mr. Nigo about whether he should disclose Mares' role as a BPP and the effect that

such a disclosure would have on his bankruptcy case; and Mares advised Mr. Nigo about bankruptcy procedures.

43. Pursuant to Bankruptcy Code Section 110(l)(1), a BPP is subject to a fine of not more than $500 for violating Bankruptcy Code Section 110(e)(2).

WHEREFORE, the Plaintiff prays for relief as set forth below.

### FIFTH CLAIM FOR RELIEF

**(Damages Based On Fraudulent Conduct Pursuant to 11 U.S.C. § 110(i)(1)(B)(ii))**

44. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 23 above, inclusive, as if set forth fully herein.

45. Section 110(i)(1) provides that if a bankruptcy petition preparer violates the statute or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, or United States Trustee, the Court shall order the bankruptcy petition preparer to pay to the debtor either the debtor's "actual damages," or the greater of (1) 2,000 or (ii) "twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services." 11 U.S.C. § 110(i)(1)(B)(ii).

46. The Debtor paid Mares $1,000.

47. Mares' conduct and behavior was fraudulent, unfair, and deceptive in that, among other things, Mares knowingly charged Mr. Nigo excessive fees and attempted to conceal this compensation in connection with the Bankruptcy Case; engaged in conduct that was violative of the Stipulated Injunction; and Mares caused Mr. Nigo to sign false Bankruptcy Documents and a false Fee Waiver Application that did not disclose Mares' role as a BPP.

WHEREFORE, the Plaintiff prays for relief as set forth below:

### SIXTH CLAIM FOR RELIEF

**(Fines Based On Failure to Disclose Compensation Pursuant to 11 U.S.C. § 110(h)(2))**

48. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 23 above, inclusive, as if set forth fully herein.

49. Section 110(h)(2) requires a BPP to file a statement disclosing any fee received from or on behalf of the debtor within the 12-month prepetition period ("Fee Disclosure Statement").

50. Mares failed to file the Fee Disclosure Statement.

51. Pursuant to Bankruptcy Code Section 110(l)(1), a BPP is subject to a fine of not more than $500 for violating Bankruptcy Code Section 110(h)(2)

WHEREFORE, the Plaintiff prays for relief as set forth below.

## SEVENTH CLAIM FOR RELIEF

### (Injunctive Relief Pursuant to 11 U.S.C. § 110(j))

52. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 51 above, inclusive, as if set forth fully herein.

53. Section 110(j)(1) of the Code authorizes the United States Trustee to bring a civil action to enjoin a bankruptcy petition preparer from "further acting as a bankruptcy petition preparer."

54. Section 110(j)(2)(B) provides that "[i]f the court finds that a bankruptcy petition preparer has continually engaged in conduct [that violated §110 or any other Code section, misrepresented their experience or education, or engaged in any other fraudulent, unfair, or deceptive conduct] and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court[,] the court may enjoin the person from acting as a bankruptcy petition preparer."

55. As fully set forth above, Mares has shown a repeated disregard for the provisions of § 110 of the Code by, among other things, violating the Stipulated Injunction, giving legal advice to Mr. Nigo, concealing her role as a BPP, creating documents containing knowingly false information to be filed with the Court, and failing to disclose the exorbitant fees charged for BPP services.

56. By virtue of the foregoing, the Court should issue a permanent injunction that enjoins Mares from acting as a BPP within the Central District of California because a narrower injunction to prevent the Defendant's unlawful conduct is insufficient.

WHEREFORE, Plaintiff prays for relief as set forth below:

## EIGHTH CLAIM FOR RELIEF

### (Attorneys' Fees Pursuant to 11 U.S.C. § 110(j)(4))

57. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 56 above, inclusive, as if set forth fully herein.

58. Section 110(j)(4) provides that the Court shall award reasonable attorneys' fees and costs to a party who brings a successful action under subsection (j), to be paid by the bankruptcy petition preparer. *See* 11 U.S.C. § 110(j)(4).

59. Therefore, to the extent that the Plaintiff is successful in his Seventh Claim For Relief and the Court enjoins the Defendant from acting as a BPP, the U.S. Trustee is entitled to an award of attorneys' fees to be paid by the Defendant.

WHEREFORE, Plaintiff prays for relief as follows:

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows:

1. That the Court fine Mares an amount not less than $3,500 for violations of Bankruptcy Code Section 110(b)(1), which fines are subject to trebling pursuant to Section 110(l)(2)(D), for total fines of not less than $10,500;

2. That the Court fine Mares an amount not less than $3,500 for violations of Bankruptcy Code Section 110(c)(1), which fines are subject to trebling pursuant to Section 110(l)(2)(D), for total fines of not less an $10,500;

3. That the Court fine Mares an amount not less than $500 for violating Bankruptcy Code Section 110(e)(2);

4. That the Court fine Mares an amount not less than $500 for violating Bankruptcy Code Section 110(h)(2);

5. That the Court order Mares to refund $1,000 to Mr. Nigo pursuant to 11 U.S.C. § 110(h)(3);

     6.     That the Court order Mares to pay damages to Mr. Nigo in the sum of $2,000 pursuant to 11 U.S.C. § 110(i)(1)(B)(i).

     7.     That the Court permanently enjoin Mares from acting as a bankruptcy petition preparer, either directly or indirectly, within the Central District of California, pursuant to 11 U.S.C. § 110(j);

     8.     That the Court order Mares to pay reasonable attorneys' fees in connection with the prosecution of this action;

     9.     That the Court order Mares to pay costs of suit; and

     10.     For such other and further relief as the Court deems just and proper.

Dated: February 24, 2021                  PETER C. ANDERSON
                                               UNITED STATES TRUSTEE


                                             BY: /s/ Abram S. Feuerstein
                                                  Abram S. Feuerstein
                                                  Assistant U.S. Trustee